UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL HORRELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 C 4996 |
| ) | |
| MERRILL LYNCH, PIERCE, FENNER, ) | Judge George M. Marovich |
| & SMITH INCORPORATED, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Horrell ("Horrell") filed a three-count complaint against defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"). In his complaint, Horrell asserts claims for defamation, tortious interference with contract and tortious interference with advantageous business relationship. Defendant has moved for summary judgment with respect to each of plaintiff's claims. Also before the Court are (1) plaintiff's motion to strike defendant's statement of material facts and memorandum of law and (2) plaintiff's motion to strike defendant's reply in support of its statement of facts. For the reasons set forth below, the Court denies plaintiff's motions. The Court grants defendant's motion for summary judgment.

**I.    Plaintiff's motions to strike**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. *See Thomas v. CitiMortgage, Inc.*, Case No. 03 C 6177, 2005 WL 1712266 at *1 n. 1 (N.D. Ill. Jul. 20, 2005); *Perez v. City of Batavia*, Case No. 98 C 8226, 2004 WL 2967153 at *10 (N.D. Ill.

Nov. 23, 2004); *see also Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This, however, does not absolve a party of its initial burden of putting forth admissible evidence to support his or its facts. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. The Court enforces Local Rule 56.1 with respect to both parties regardless of whether either party moves to strike non-complying portions, because the purpose of the rule is to make *the Court's* job manageable, not to give litigants additional ammunition to use against one another.

Based on Local Rule 56.1, plaintiff moves to strike defendant's statement of material facts and memorandum of law. This is unnecessary. As the Court has already explained, it does not consider facts that are not supported by admissible evidence and does not consider facts in briefs that are not included in a statement of material facts. (The Court does not mean to imply that defendant failed to support its facts with admissible evidence; most of its facts were duly supported. Some of plaintiff's were not.) The Court need not take the time to strike that which it can simply ignore. The reply plaintiff seeks to strike was both a reply in support of defendant's statement of facts (which is not allowed under the rules and which the Court will not

consider) and a response to plaintiff's statement of facts (which is allowed under the rule and which the Court will consider). The Court will not strike defendant's pleadings, and it denies plaintiff's motions to strike.

## II. Background

This case arises out of a conversation between a Merrill Lynch Financial Advisor, William Hostetler ("Hostetler"), and one of Merrill Lynch's clients, Randy Soule ("Soule"). During the conversation, Hostetler allegedly defamed plaintiff Horrell. The following facts are undisputed unless otherwise noted.

Defendant Merrill Lynch employed Hostetler as a Financial Advisor from August 1999 until March 2004. Hostetler worked with Terri Ucci as part of a team called the "Ucci-Hostetler" team. Among the Ucci-Hostetler team's accounts were those of (1) Soule and (2) Archimedes Financial, LLC ("Archimedes"), a company owned by plaintiff Horrell. Soule and Horrell knew each other; they had had business dealings since 1997.

Soule was the president, CEO and majority shareholder of Network Electric Company ("NEC") from January 1, 1997 until December 10, 2000. At some point (the timing is unclear from the record), Soule chose Horrell to act as a consultant/broker with respect to the sale of NEC. A company called Quanta purchased NEC in late 2000, and Horrell was paid a commission for his role in the sale. Soule continued to work for NEC–which was by then a Quanta subsidiary–until December 2002.

After the sale of NEC to Quanta, Horrell had other dealings related to Quanta. Horrell's Company, Archimedes, became a member and owner of a company called IPower ("IPWR"). It is clear from the supported facts in the record that Soule had a connection to IPWR (Soule was,

for example, a signatory on IPWR's Merrill Lynch account), but it is not clear what his connection was. In or about 2001, IPWR purchased from NEC $19.1 million in receivables owed to NEC by Resource Technology Corporation ("RTC"). Quanta's involvement was that it posted a $4.75 million letter of credit so that IPWR could borrow money. Quanta also secured (by providing a letter of credit) a loan from Merrill Lynch Bank of USA to IPWR.

In early July 2002, Horrell contacted Merrill Lynch about trading Quanta stock. On July 1, 2002, Horrell called Hostetler and asked to buy put options on Quanta stock in Horrell's Archimedes account. The trade was not executed on July 1, 2002.

The next morning, on July 2, 2002, Horrell told Hostetler he wanted to sell short Quanta stock in the IPWR account. The price of Quanta stock was sharply lower when the markets opened that morning than it had been at the close of business the day before. The parties dispute the contents of the conversation(s) between Horrell and Hostetler. In particular, the parties dispute whether Horrell mentioned that he had information the "street" did not know about Quanta. The actual contents of the conversation, however, do not matter. What is relevant and undisputed is that Hostetler was concerned about Horrell's desire to sell short Quanta stock. Hostetler sought advice from others at Merrill Lynch. The parties also dispute whom Hostetler spoke to, the contents of those conversations and who at Merrill Lynch decided that Merrill Lynch would not take trades from Horrell. Again, these details are irrelevant to the case. The relevant detail, which is undisputed, is that Merrill Lynch decided not to accept any trades from Horrell.

Separately, in December 2002, Quanta discharged Soule from NEC. Shortly thereafter, Soule and Horrell discussed additional financing for RTC. The reason for the contemplated loan

to RTC was to protect the receivables RTC owed NEC, which IPWR had purchased. A deal never materialized and was never put into writing. It is not clear from the record who the parties to such a deal might have been. Soule testified that IPWR might have made the loan. Plaintiff put forth evidence that either RTC or Banco Panamericano (whose connection to the case is not made clear in the record) might have received the loan. Plaintiff also put forth evidence that other deals Horrell had forged between Soule and RTC were not always put into writing until after the details were finalized.

**The allegedly defamatory conversation**

In April 2003, Soule telephoned Merrill Lynch. Although Soule was trying to reach Ucci, he spoke with Hostetler about strategies for pursuing options. Soule and Hostetler spoke about options again on or about May 6, 2003. The parties dispute the contents of the May 6, 2003 telephone call. The parties agree that during the May 6, 2003 conversation, Soule mentioned the possibility of involving Horrell in the options deals. According to defendant, Hostetler told Soule that Merrill Lynch had made a business decision not to work with Horrell. Specifically, Hostetler testified that he told Soule, "[I]t's a business decision I can't work with Mike Horrell, so I can't work with you." According to plaintiff, the conversation proceeded as Soule testified, which is as follows:

> Q: All right. So you told Mr. Hostetler that you'd like to involve Mike Horrell in the conversation?
>
> A: Yeah, to listen to what this was about and to make a good educated decision as to whether or not I was even interested in going into this sort of thing. **He told me that if Mike Horrell was going to be involved that he was not interested in talking to me about it. He wouldn't deal with me if I was going to have Mike Horrell on the phone** and there would be no reason to have Mike Horrell on the phone.

> I asked him why or what his problem was with having Mike listen in on what we were going to be talking about, and **he told me that he wouldn't deal with Mike Horrell and, as far as he was concerned, that Mike Horrell and his work associates were dirty people.**
>
> I queried him as to **who he was referencing as far as his work associates were concerned. I queried him as to whether or not it was the Resource Technology folks and he further lead on to let me know that it was–it was several of the people that were involved with Resource Technology and, most specifically, Leon Greenblatt.**
>
> I asked him to explain to me why he felt that these people were dirty. And that I had been dealing with them for several years and didn't find them to be. And **he further elaborated and told me that these people had been flat out convicted of insider dealings.**
>
> At that point I continued to query him as to the specifics of it so that I could get a better understanding as to something that was news to me, and he told me he had said enough and that me and him had no further business. End of conversation.

(Emphasis added). According to defendant, Hostetler never said that Horrell and his associates had been convicted of insider trading.

The conversation between Hostetler and Soule left Soule angry. Soule had always known Horrell to be honest. He did not believe that Horrell had been convicted of insider trading, and he know that Horrell could not have had inside information about Quanta because Soule was Horrell's only contact at Quanta. Still, in or about 2000, Soule had learned from Horrell that Leon Greenblatt had been investigated for insider trading. So Soule's conversation with Hostetler made Soule angry about the possibility that Horrell had been involved with the earlier investigation of Greenblatt. Soule testified that he was contemplating doing business with Horrell only if he proved himself innocent. When Soule spoke with Horrell, Soule told Horrell that he need not explain himself and that he was not going to deal with RTC anymore.

It is undisputed that Horrell has never been convicted of insider trading. It is undisputed that Horrell has never traded on inside information.

After the May 6, 2003 call between Hostetler and Soule, Soule and Horrell continued to have a business relationship. They continued their involvement in IPWR. In addition, Horrell continued to have Soule's power of attorney with respect to an account at Bear Stearns.

### III. Summary Judgment Standards

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### IV. Discussion

#### A. Plaintiff's defamation claim

The duty of a federal court considering a claim under its diversity jurisdiction is "to predict what the state's highest court would do if presented with the identical issue." *Taco Bell*

*Corp. v. Continental Casualty Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). The parties agree that Illinois law applies to plaintiff's claims.

In Count I, plaintiff asserts that Hostetler defamed Horrell, an act for which Merrill Lynch is vicariously liable. Here, the parties dispute whether the allegedly defamatory statements were made. Accordingly, the Court considers whether, assuming the truth of plaintiff's version of the statements, the defendant is entitled to judgment as a matter of law. Plaintiff put forth evidence that Hostetler made three allegedly defamatory statements: 1) that "Mike Horrell and his work associates were dirty"; (2) that Hostetler would not deal with Horrell and would not deal with Soule if Horrell was on the phone; and (3) that "these people had been flat out convicted of insider dealings."

Under Illinois law, a defamatory statement is one that "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 726 (7th Cir. 2004) (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 206 (Ill. Sup. Ct. 1992)). To prevail, the plaintiff must establish that the statement is false. *Voyles v. Sandia Mortgage Corp.*, 196 Ill.2d 288, 751 N.E.2d. 1126, 1133 (Ill. Sup. Ct. 2001) ("To recover on a claim of defamation, plaintiff must prove that the statement or publication was false."). Certain types of statements–such as vague, unprovable statements and statements of opinion–are not actionable under Illinois law. *Lifton v. The Board of Ed. of the City of Chi.*, 416 F.3d 571, 579 (7th Cir. 2005). For a statement to be actionable, it must, among other things, "contain an objectively verifiable factual assertion." *Lifton*, 416 F.3d at 579 (citing *Wynne v. Loyola Univ.*, 741 N.E.2d 669, 676 (Ill. App. 1st Dist. 2000)).

Defamatory statements are actionable *per se* (i.e., without the need to prove special damages) or *per quod.* To prevail on a claim that a statement is defamatory *per quod*, the plaintiff must prove special damages, which means "pecuniary losses resulting from the defamatory statement." *Salamone v. Hollinger Int'l, Inc.*, 347 Ill.App.3d 837, 807 N.E.2d 1086, 1092 (Ill.App.Ct. 1st Dist. 2004). Certain statements are defamatory *per se* because they are so obviously harmful that injury to the plaintiff's reputation is presumed. Statements that (1) impute the commission of a crime; (2) impute infection with a loathsome disease; (3) impute an inability to perform or a want of integrity in one's employment; or (4) suggest a lack of ability or integrity in one's profession are all considered to be defamatory *per se*. *Republic Tobacco*, 381 F.3d at 726 (citing *Kolegas*, 607 N.E.2d at 206). Illinois, however, recognizes the innocent construction rule. If the statement that would otherwise be considered defamatory *per se* is capable of an innocent construction, it is not actionable *per se*. *Republic Tobacco*, 381 F.3d at 727. The Illinois Supreme Court has explained:

> a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*.
> This preliminary determination is properly a question of law to be resolved by the court in the first instance[.]

*Chapski v. The Copley Press*, 92 Ill.2d 344, 442 N.E.2d 195, 199 (Ill. Sup. Ct. 1982).

### "Dirty" work associates

First, the Court considers Hostetler's alleged statement that "Horrell and his work associates were dirty." For a statement to be actionable under Illinois law, it must, among other things, "contain an objectively verifiable factual assertion." *Lifton*, 416 F.3d at 579 (citing *Wynne v. Loyola Univ.*, 741 N.E.2d 669, 676 (Ill. App. 1st Dist. 2000)). Accordingly, a vague statement that one is a crook or greedy is not defamatory because such assertions are merely

opinions that lack verifiable facts. *See Lifton*, 416 F.3d at 578-579 (statements that plaintiff was "lazy," "burnt out," "unstable," and "resting on her laurels" were statements of opinion rather than objectively verifiable facts); *Wilkow v. Forbes, Inc.*, 241 F.3d 552, 557 (7th Cir. 2001) ("an allegation of greed is not defamatory . . . an allegation of sharp dealing [is not] anything more than an uncharitable opinion. Illinois law does not attach damages to name-calling."); *Dubinsky v. United Airlines Master Exec. Council*, 303 Ill.App.3d 317, 329, 708 N.E.2d 441, 451 (Ill. App. Ct. 1st Dist. 1999) (statement that person was "crook" was not actionable defamatory statement). Hostetler's alleged statement that "Mike Horrell and his work associates were dirty people" is not actionable. It is the sort of name-calling not actionable under Illinois law because it is an opinion rather than an objectively, verifiable factual assertion.

**Refusal to deal**

Hostetler's second allegedly defamatory statement is that he would not deal with Horrell and that he would not deal with Soule with Horrell on the phone. These statements are not actionable defamatory statements under Illinois law because plaintiff has failed to put forth evidence that the statements were false. It is undisputed that Merrill Lynch made a business decision to stop doing trades with Horrell. Accordingly, plaintiff has failed to establish that Hostetler's alleged statements were false. The statements are not defamatory as a matter of law.

**Convicted of insider dealings**

Third, Horrell put forth evidence of Soule's description of a conversation with Hostetler. Soule testified as follows:

> I asked him why or what his problem was with having Mike listen in on what we were going to be talking about, and **he told me that he wouldn't deal with Mike Horrell and, as far as he was concerned, that Mike Horrell and his work associates were dirty people.**
>
> I queried him as to **who he was referencing as far as his work associates were concerned. I queried him as to whether or not it was the Resource Technology folks and he further lead on to let me know that it was–it was**

-10-

> **several of the people that were involved with Resource Technology and, most specifically, Leon Greenblatt.**
>
> I asked him to explain to me why he felt that these people were dirty. And that I had been dealing with them for several years and didn't find them to be. And **he further elaborated and told me that these people had been flat out convicted of insider dealings.**
>
> At that point I continued to query him as to the specifics of it so that I could get a better understanding as to something that was news to me, and he told me he had said enough and that me and him had no further business. End of conversation.

(Emphasis added).

Because the allegedly defamatory statement accuses someone of a crime (insider trading), the alleged statements would ordinarily be considered defamatory *per se*. Defendant, however, argues for application of the innocent construction rule, which is a question of law for the Court to decide. Under the innocent construction rule, where "the statement may . . . reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*." *Chapski*, 442 N.E.2d at 199. The Court concludes that Horrell's alleged statement about insider dealing "may . . . reasonably be interpreted as referring to someone other than the plaintiff." The Court notes that the conversation started with mention of Horrell and work associates. Soule asked who Hostetler was talking about and Soule learned that Hostetler was referring to Resource Technology "folks" and Leon Greenblatt. Soule asked why "these people" were dirty, and Hostetler allegedly responded that "these people had been flat out convicted of insider dealings." It is reasonable to conclude that when Hostetler said "these people" had been convicted, he was referring to Resource Technology "folks" and Leon Greenblatt, not to Horrell. Accordingly, the allegedly defamatory statements are not actionable *per se*. They may, with sufficient evidence, however, be actionable *per quod*.

The Court now considers whether the plaintiff has put forth sufficient evidence from which a reasonable jury could conclude that Merrill Lynch subjected Horrell to defamation *per quod*. In order to establish that Horrell's statements about insider dealings were defamatory *per quod*, plaintiff must put forth extrinsic evidence to establish that they were defamatory and put forth evidence of special damages. Plaintiff has put forth sufficient evidence that the statement was defamatory. Specifically, Horrell put forth evidence that after Soule heard the statement, he was angry about the possibility that Horrell had been involved with the investigation of Greenblatt for insider trading, an investigation about which Horrell had previously told Soule. That is enough evidence from which a jury could conclude that Hostetler was referring to Horrell as well as his work associates when he allegedly said that "these people had been flat out convicted of insider dealings."

Plaintiff, however, must still prove special damages in order to survive summary judgment. *Cf. Navistar Int'l Trans. Corp. v. Freightliner Corp.*, Case No. 97 C 3792, 1999 WL 569577 at * 4 (N.D. Ill. July 20, 1999). Plaintiff argues that he lost his commission on the potential loan between RTC and/or Banco Panamericano and another entity because of Hostetler's statement to Soule. Plaintiff put forth evidence that Soule was angered by Hostetler's statement about Horrell and that Soule testified that he would not consider future deals with Horrell until Horrell proved that he was innocent of insider dealings. Plaintiff also put forth evidence that in December 2002, Horrell and Soule discussed additional financing for RTC in order to protect the receivables RTC owed NEC. The undisputed evidence is that a deal never materialized and was never put into writing. What plaintiff has failed to put forth, however, is any evidence that the reason the deal fell apart was Hostetler's statement. (A simple affidavit from Soule would have done the trick.) Plaintiff did not even put forth evidence that the deal fell apart *after* Hostetler's statement. Furthermore, the plaintiff failed to put forth

sufficient admissible evidence from which a jury could actually measure special damages. Missing from the record is any evidence of the actual size of the loan and the amount, if any, that Horrell would have collected had the loan come to fruition. Without evidence of a pecuniary loss caused by the defamatory statement, plaintiff cannot survive summary judgment on a claim for defamation *per quod*.

Defendant is entitled to judgment as a matter of law. The Court grants defendant's motion for summary judgment on Count I.

### B. Plaintiff's claim for tortious interference with contract

In Count II, plaintiff asserts a claim for tortious interference with contract. Under Illinois law, to establish a claim for tortious interference with contract, a plaintiff must establish: "(1) the existence of a contract; (2) the defendant's awareness of the contract; (3) the intentional inducement of a contract breach; (4) an actual breach of contract; and (5) damages." *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 545 N.E.2d 672, 676 (1989)).

Plaintiff argues that Merrill Lynch interfered with a loan agreement such that Horrell lost a commission on the loan. Plaintiff argues that Merrill Lynch induced the breach of the contract when Hostetler told Soule that Hostetler would not deal with Horrell and would not deal with Soule with Horrell on the phone. Plaintiff fails to put forth sufficient evidence with respect to several essential elements of his claim.

First, plaintiff fails to establish the existence of an enforceable contract. Under Illinois law, "[a] contract, to be valid, must contain offer, acceptance, and consideration; to be enforceable, the agreement must also be sufficiently definite so that its terms are reasonably certain and able to be determined." *Halloran v. Dickerson*, 287 Ill.App.3d 857, 679 N.E.2d 774,

782 (Ill.App.Ct. 5th Dist. 1997). The record lacks any evidence of an enforceable contract. Plaintiff put forth evidence that he and Soule discussed the possibility of a loan and that the loan might have involved RTC and/or Banco Panamericano and/or IPWR. The record contains no evidence about the actual size of the loan or its repayment terms. Accordingly, the plaintiff has failed to put forth sufficient evidence from which a reasonable jury could conclude that a loan contract existed.

The plaintiff has also failed to put forth sufficient evidence to support other essential elements of his claim. Plaintiff puts forth no evidence that Hostetler *knew* about the alleged contract or that he was trying to induce Soule (who seems not to have been a party to the alleged contract in any case) to breach that contract.

Plaintiff has failed to put forth sufficient evidence to support his claim for tortious interference with contract. Merrill Lynch is entitled to summary judgment on Count II, and the Court grants defendant's motion for summary judgment with respect to Count II.

**C.     Plaintiff's claim for tortious interference with business advantage**

Defendant also moves for summary judgment on Count III, plaintiff's claim for tortious interference with prospective business advantage. To establish a claim for tortious interference with prospective business advantage under Illinois law, a plaintiff must establish: "(1) a reasonable expectation of entering into a valid business relationship; (2) defendant's knowledge of this expectation; (3) defendant's purposeful interference that prevents the plaintiff's legitimate expectation from becoming a valid business relationship; and (4) damages." *Cody*, 409 F.3d at 859 (citing *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 568 N.E.2d 870, 878 (1991)).

Plaintiff argues that he had a reasonable expectation of entering a valid business relationship in that he and Soule discussed (shortly after Soule's December 2002 discharge) a possible loan involving one or more of RTC, IPWR and Banco Panamericano. Plaintiff's claim fails, however, because plaintiff fails to put forth any evidence that Hostetler–who allegedly interfered with the prospective economic advantage–knew about the possible loan deal. Plaintiff argues that Hostetler had to know that Soule and Horrell were connected because Soule wanted to involve Horrell on the May 6, 2003 conversation. That, however, merely establishes that Hostetler knew that Soule wanted to involve Horrell in the May 6, 2003 options discussion. The record contains no evidence that Hostetler knew about the possible loan agreement, let alone that he intended to interfere with that agreement. Accordingly, Merrill Lynch is entitled to judgment as a matter of law on Count III.

The Court grants defendant's motion for summary judgment on Count III.

## V. Conclusion

For the reasons set forth above, the Court denies plaintiffs' motions to strike. The Court grants defendant's motion for summary judgment. All other pending motions are denied as moot.

ENTER:

George M. Marovich
United States District Judge

DATED: September 22, 2006